# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FALCON INSURANCE COMPANY, LLC., an Illinois Limited Liability Corporation, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| | ) Case No.: CIV-21-56-D |
| ANITA TIDWELL, as the Personal Representative of the Estate of GARY TIDWELL, MACY DRAKE, Individually; TIFFANY CHAMBRAY, Individually; JOHN GOERING, Individually; and, EAN HOLDINGS, LLC d/b/a ENTERPRISE RENT-A-CAR, a foreign liability company, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

## ORDER

In this declaratory judgment action, Plaintiff Falcon Insurance Company, LLC has submitted a Motion for Summary Judgment [Doc. No. 36] asserting that it owes no defense or indemnity obligations under an insurance policy issued to Gary Tidwell.[1] Mr. Tidwell, Ms. Chambray, and Mr. Goering have responded in opposition [Doc. Nos. 42, 43, 44] and Ms. Chambray and Mr. Goering have each submitted a Cross-Motion for Summary

---

[1] Mr. Tidwell passed away during the pendency of this action and Anita Tidwell was substituted as the party in interest. *See* [Doc. Nos. 51, 52]. Falcon adopted and asserted its Motion for Summary Judgment against Ms. Tidwell [Doc. No. 53].

1

Judgment [Doc. Nos. 41, 45]. The matter is fully briefed [Doc. Nos. 46, 47, 48, 49, 50] and at issue.[2]

## INTRODUCTION

Oklahoma's compulsory insurance statutes require motor vehicle insurance policies to provide "omnibus coverage." *O'Neill v. Long*, 54 P.3d 109, 13 (Okla. 2002); Okla. Stat. Ann. tit. 47, § 7-600, *et seq*. Omnibus coverage "extends liability coverage to the named insured and other persons using the insured vehicle with permission." *Id.* Ms. Chambray and Mr. Goering, who were involved in a collision with a vehicle rented by Mr. Tidwell and driven by Ms. Drake, rely on this statutorily required coverage in seeking to recover under an insurance policy issued by Falcon to Mr. Tidwell. Falcon denies coverage, claiming that Ms. Drake is not an insured person under the policy and was not driving an insured vehicle. The Court agrees with Defendants that, as a function of the statutorily required omnibus coverage, Falcon was required to extend coverage to Ms. Drake as a permissive user of a vehicle that would otherwise have been insured under the policy.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is

---

[2] A Clerk's Entry of Default [Doc. No. 20] was entered against Ms. Drake and Ean Holdings LLC ("Enterprise") after they failed to plead or otherwise respond to Falcon's Complaint.

2

genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id*. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id*.

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co*., 916 F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross motions for summary judgment, the Court is entitled to assume "'no evidence needs to be considered other than that filed by the parties.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

## UNDISPUTED MATERIAL FACTS

Tiffany Chambray and John Goering were injured when a Nissan Sentra being driven by Macy Drake collided with their vehicle. The Sentra had been rented by Gary Tidwell from Enterprise for seven days for use while his Chevrolet Equinox was undergoing repairs and maintenance work.[3] At the time of the accident, Mr. Tidwell's Equinox had been returned to service and he was using it to drive to a doctor's appointment. Mr. Tidwell had given Ms. Drake permission to drive the Sentra, and she was using it to follow him to the doctor's appointment.

---

[3] Falcon does not dispute that the rental records show that Mr. Tidwell rented the vehicle for seven days from October 12, 2020 through October 19, 2020, but argues that the rental receipt shows that the vehicle was not returned until October 20, 2020. Because the accident occurred on October 19, 2020 – within the original seven-day rental period – the fact that the vehicle was not returned until October 20, 2020 is not material.

Mr. Tidwell had an automobile liability insurance policy issued by Falcon in force at the time of the accident. As consideration for the premium, Falcon agreed to pay compensatory damages arising from an auto accident "for which an **insured person** is legally liable[.]" *See* Policy at 9, Pl.'s Br., Ex. 1 (emphasis in original). The policy includes the following relevant definitions:

> "**Insured person**", in this Part I, means:
> 1. **You**, a **family member**, or an **insured driver**[4] for the ownership or **use** of a:
> > a. **Covered auto** covered by this Part I;
> > b. **Non-owned auto** or **temporary substitute auto**; or
> > c. **Trailer** while being towed by a **covered auto**, a **nonowned auto**, or a **temporary substitute auto**.
> 
> However, if a **person** described in this clause #1 has not been disclosed to **us**, then that **person** will be an insured **person** under this Part I only for the portion of the damages due to **bodily injury** or **property damage** that is less than or equal to the **minimum limits**, and we have no duty to defend that **person**.
> 
> 2. Any other **person** who is using a:
> > a. **Covered auto**; or
> > b. **Trailer** while being towed by a covered auto; with the express or implied permission from the **named insured**.
> 
> However, if a **person** described in this clause #2 is using a **covered auto** either:
> > a. Without a **driver's license** in effect; or
> > b. Outside the scope of permission allowed by the **named insured**;
> 
> then that person will be an **insured person** under this Part I only for the portion of damages due to **bodily injury** or **property damage** that is less than or equal to the **minimum limits**, and **we** have no duty to defend that person.
> 
> 7. "**Covered auto**" means:
> a. A motor vehicle that:
> > (1) Is **owned** by **you**;
> > (2) **You** have asked **us** to insure; and

---

[4] An "insured driver" is defined as a person "specifically identified on the declarations page as a covered driver," which in this case includes only Mr. Tidwell. Policy at 6.

4

       (3) Is shown on the **declarations page**;
       but only for the coverage(s) that have been bought for it.
  b. An **additional acquired auto**.
  c. A **replacement auto**.[5]
  d. A **temporary substitute**.
An **auto** or **motor vehicle** ceases to be a **covered auto** when it is sold, assigned, gifted, titled transferred, or possession permanently transferred, to anyone other than **you** or an **insured driver**.

20. "**Non-owned auto**" means an **auto**, if it is:
a. **Used** with the express permission of the **owner** of the **auto** and within the scope of that permission;
b. Not **owned** by, registered to or available for regular or frequent **use** by **you**, a **family member**, an **insured driver**, or any **person** who resides in **your household**;
c. Not **owned** by, leased to or rented to **your** employer or the employer of any **family member**, **insured driver**, or any **person** who **resides** in **your household**;
d. Not **used** for **business** purposes;
e. Not an **auto** rented for more than 7 consecutive days by **you**, a **family member**, an **insured driver**, or any **person** who resides in your **household**; or
a. Not an **auto** in possession, for more than 7 consecutive days, by **you**, a **family member**, an **insured driver**, or any **person** who resides in **your household**.
A **non-owned auto** does not include a **temporary substitute auto**.

18. "**Temporary substitute auto**" means an **auto** that is a substitute for a **covered auto** while that **covered auto** is not in **use** due to breakdown, servicing, repair, **loss** or destruction if the substitute **auto** is:
a. Rented by **you** or an **insured driver** under a written contract from a **business** engaged in renting **motor vehicles**;
b. **Used** with the express permission of the **owner** of that **auto** and within the scope of that permission; and
c. Not **owned** by **you**, a **family member** or any **insured driver**.
An **auto** ceases to be a **temporary substitute auto** the earlier of when:
a. The **covered auto** it was replacing is repaired, restored to service or replaced;
b. The auto being rented is returned; or

---

[5] The parties do not contend that the Sentra qualifies as "additional acquired auto" or a "replacement auto."

5

  c. 30 days.

*Id.* at 5-8, 10. The policy also provides that "[l]iability insurance is provided in this policy in accordance with coverage required by the Compulsory Insurance Law of Oklahoma." *Id*. at 9.

## DISCUSSION

Falcon argues that Ms. Chambray and Mr. Goering are not entitled to benefits under the policy because the Sentra does not meet the definition of a temporary substitute auto and Ms. Drake does not meet the definition of an insured person. Defendants counter that the vehicle qualifies as either a temporary substitute auto or a non-owned auto under the policy, and that Oklahoma law mandates coverage for a permissive user of an insured vehicle. To resolve this dispute, both the terms of the policy and the coverage required by Oklahoma law must be considered.

### A. The Policy

Under Oklahoma law, "unambiguous insurance contracts are construed, as are other contracts, according to their terms." *Max True Plastering Co. v. U.S. Fid. & Guar. Co*., 912 P.2d 861, 869 (Okla. 1996). "However, because of their adhesive nature, these contracts are liberally construed to give reasonable effect to all their provisions." *Id.* at 868.

Here, the terms of the policy unambiguously[6] exclude permissive users from liability coverage when they are operating non-owned autos. The policy provides coverage

---

[6] Defendants argue that the policy is ambiguous because it is not clear whether coverage for a temporary substitute auto remains in effect while the regular car is being used to assist in the return of the substitute car to the rental company. This argument is misplaced because the factual scenario contemplated by Defendants is not before the Court – Mr. Tidwell and

6

for an "insured person," which includes Mr. Tidwell or a resident family member when using a covered auto, a temporary substitute auto, or a non-owned auto. An "insured person" also includes any other person using a covered auto or a temporary substitute auto. Construed together, these policy provisions provide liability coverage whenever Mr. Tidwell or a resident family member drives the Equinox, a temporary substitute auto, or a non-owned auto, but only extends coverage to other drivers if they are operating the Equinox or a temporary substitute auto. Thus, for Ms. Drake to qualify as an insured person under the policy, the Sentra would need to satisfy the definition of a temporary substitute auto.

Amongst other requirements, the policy defines a temporary substitute auto as "a substitute for a covered auto while that covered auto is not in use due to breakdown, servicing, repair, loss or destruction." Policy at 8. The policy further provides that a vehicle "ceases to be a temporary substitute auto" when the vehicle it was replacing "is repaired, restored to service or replaced." *Id.* The undisputed facts show that Mr. Tidwell had retrieved his Equinox from the repair shop and was driving it at the time of the accident. The Equinox was therefore "restored to service" and was no longer "not in use." Accordingly, the Sentra is not a temporary substitute auto under the terms of the policy and Ms. Drake does not qualify as an insured person.

---

Ms. Drake were not in the process of returning the Sentra but were instead using the vehicles to go to Mr. Tidwell's medical appointment. Moreover, the Court is not persuaded that any of the terms "are susceptible to two constructions" such that the contract is ambiguous. *Max True Plastering Co.*, 912 P.2d at 869.

7

Without coverage under these policy provisions, Defendants are left to argue that the Sentra is insured under the policy as a non-owned vehicle and Oklahoma's compulsory insurance laws mandate liability coverage for a permissive user of the vehicle. The policy defines a non-owned vehicle as one that is used with the express permission of the owner, not available for regular use, not owned or rented by an insured's employer, not used for business purposes, and not rented for more than seven consecutive days. *Id.* at 6-7. Although Falcon states in conclusory fashion that the Sentra is not a non-owned auto, it does not explain how the Sentra fails to meet the definition provided in the policy. The undisputed facts show that Mr. Tidwell had permission to drive the Sentra from its owner, it was not available to Mr. Tidwell for regular use, it was not used for business purposes, and it was not rented for more than seven consecutive days. The Sentra therefore qualifies as a non-owned auto under the policy. The remaining issue, then, is whether Oklahoma law requires liability coverage for a permissive user of a vehicle that would have been insured under the policy had Mr. Tidwell been driving it at the time of the collision.

**B. Oklahoma Law**

Codified at Okla. Stat. tit. 47, §§ 7-600 *et seq.*, Oklahoma's compulsory insurance statutes "require liability insurance in conjunction with the operation of a motor vehicle." *Mulford v. Neal*, 264 P.3d 1173, 1179 (Okla. 2011). When the required insurance is obtained via an owner's policy,[7] the policy

---

[7] An owner's policy is one that "shall designate by explicit description or by appropriate reference all vehicles with respect to which coverage is thereby to be granted,…" Okla. Stat. tit. 47, § 7-600(1)(a). In support of their contention that the policy is an owner's policy, Defendants refer to the collision report and the policy declarations page. Falcon

8

> shall insure the person named therein and insure any other person, except as provided in subparagraph c of this paragraph, using an insured vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, operation or use of the vehicle,… .

Okla. Stat. tit. 47, § Section 7-600(1)(b).[8] This requirement is referred to as omnibus coverage and the Oklahoma Supreme Court has repeatedly emphasized that it mandates coverage for permissive users of an insured vehicle. *See Mulford v. Neal,* 264 P.3d 1173, 1179 (Okla. 2011) ("Like the fault-based financial responsibility statutes, the compulsory insurance statutes require that the motor vehicle owner's liability insurance policy must provide omnibus coverage for all permissive uses."); *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 721 (Okla. 2009) ("As part of this mandate, the law requires that every owner's policy of automobile liability insurance include an 'omnibus clause' that insures against liability not only the named insured, but also any other person using an insured vehicle with the express or implied permission of the named insured."); *O'Neill*, 54 P.3d at 113 (Okla. 2002) ("Oklahoma's Compulsory Insurance Law requires omnibus coverage.").

The "principal purpose" of this compulsory insurance requirement "is to protect the public from the financial hardship that may result from the use of automobiles by financially irresponsible people." *O'Neill*, 54 P.3d at 113. Indeed, "the legislature intended

---

does not directly dispute that the policy is an owner's policy, but instead contends that this fact is not material to summary judgment and, additionally, that the collision report does not support this assertion. The policy's declarations page designates "by explicit description" that the Equinox is the vehicle to which coverage is granted. Pl.'s Br. at Ex. 3. Accordingly, the policy issued by Falcon to Mr. Tidwell qualifies as an owner's policy.
[8] Subparagraph c of § 7-600(1) states that an owner's policy "may provide for exclusions from coverage in accordance with existing laws."

that *every vehicle operated in this state be secured* against liability to innocent victims of the negligent operation of insured vehicles." *Ball*, 221 F.3d at 721 (emphasis in original). This legislative mandate "has effectively 'transformed what was a private insurance arrangement into a quasi-public obligation.'" *Mulford*, 264 P.3d at 1181 (quoting *Harkrider v. Posey*, 24 P.3d 821, 830 (Okla. 2000). The result is that an "insurer cannot escape its liability for the minimum amount of liability insurance mandated by the compulsory insurance law when an innocent third party is negligently injured by an insured or an insured motor vehicle[.]" *Id.* at 1183.

Consistent with this "clearly articulated public policy," the Oklahoma Supreme Court has not hesitated to nullify insurance provisions which deny coverage to innocent victims. *Id.* at 1180; *see, e.g., Ball*, 221 P.3d at 722 (nullifying loaned vehicle exclusion which "render[ed] uninsured an otherwise insured vehicle when a certain class of people, customers of a named-insured dealership or repair shop, happen to be driving that vehicle"); *Tapp v. Perciful*, 120 P.3d 480, 484 (Okla. 2005) (nullifying provision denying coverage while an insured vehicle is being repaired by a car business because it "denies coverage to a class of insureds" and "would prejudice an innocent third party"); *Hartline v. Hartline*, 39 P.3d 765, 773 (Okla. 2001) (nullifying provision excluding named insured or family member from recovering under policy as an injured passenger where it operates to deny all coverage to the injured party).

Most relevant to this matter, Oklahoma courts have invalidated policy exclusions and provisions that fail to cover permissive users of an otherwise insured vehicle. In *Mulford*, 264 P.3d at 1173, the Oklahoma Supreme Court held that separate endorsements

in a mother's insurance policy and a father's insurance policy that each excluded their teenage son from coverage were inconsistent with the compulsory insurance laws. *Id.* at 1174. The court further held that the involved vehicle qualified as a non-owned auto under the mother's policy and the injured party was therefore entitled to benefits. *Id.* at 1183-1184. Thus, the court extended coverage to a permissive user of an insured vehicle, even though the terms of the policy attempted to exclude the permissive user from coverage. *Id.*

*O'Neill v. Long*, 54 P.3d 109 (Okla. 2002) addressed liability coverage for permissive users even more directly. At issue was a policy provision limiting coverage to permissive users acting within the scope of the permission. *Id.* at 113. Relying on the omnibus coverage required by Okla. Stat. tit. 47, § 7-600(1)(b), the Oklahoma Supreme Court held that the coverage limitation "contravene[d] the public policy embodied in our Compulsory Insurance Law which evinces an unmistakable intent to maximize insurance coverage for the greater protection of the public." *Id.* at 114. The required omnibus coverage, the court explained, could not be diluted by the parties' contractual agreement:

> The relevant factor in the statutory omnibus provision is the use of the insured vehicle with express or implied permission. Once the named insured extends permission, either express or implied, the statutory provision does not provide for limitations on the scope of permission granted.

*Id.* at 114. Or, to put it even more emphatically, "[o]nce express or implied permission to use an insured vehicle is granted, the omnibus coverage is fixed barring criminal theft." *Id.*

The Oklahoma Court of Civil Appeals relied on this same reasoning to extend coverage to a rental vehicle being driven by a permissive user in *Sisk v. Gaines*, 144 P.3d 204 (Okla. Civ. App. 2006). The facts of *Sisk* are remarkably similar to the facts of this

11

case: a policy holder rented a car from Enterprise to use while their covered vehicle was undergoing repairs, the policy holder permitted a friend to drive the rental car, and the friend was involved in an accident. *Id.* at 206. Like the policy Mr. Tidwell purchased from Falcon, the policy definitions in *Sisk* unambiguously limited coverage for non-owned vehicles to only the named insured or a resident relative. *Id.* Based on these provisions, the insurer argued (just as Falcon does here) that the policy provided no coverage because the friend "was not an insured under the [] policy, and as to her, the involved car was not a covered automobile."[9] *Id.*

The court noted that the rental car could qualify as either a temporary substitute auto or non-owned auto under the policy terms, but ultimately found it "unnecessary to interpret the contract language because [the insurer] is required by statute to provide coverage to a permitted user of its insureds' rental car." *Id.* 209. In reaching this conclusion, the court observed that the policy would have provided coverage if the permissive user was driving the owner's regular vehicle or if the named insured had been driving the rental vehicle. *Id.* The court then explained that "[i]t would be inconsistent with the public policy of the Compulsory Liability Insurance Law to permit the [the policyholder and the insured] to agree to provide coverage for a permitted user of one kind of covered vehicle but not another." *Id.* Thus, as a function of the omnibus coverage mandated by Oklahoma law, the

---

[9] Falcon attempts to distinguish *Sisk* by noting that the policy at issue defined an insured person as "any other person using [the insured auto] with your permission" and this language does not appear in Mr. Tidwell's policy. However, as explained in *Sisk*, this language is the "omnibus clause" and it is mandated by statute. *Sisk*, 144 P.3d at 209 n. 5. Thus, Falcon is required to provide this coverage even it has neglected to include this exact language in its policy.

insurer was required "to provide coverage in the [] policy for permitted users of covered vehicles, including rental cars." *Id.*

Like the insurers in *Sisk*, *O'Neill*, and *Mulford*, Falcon's policy provisions attempt to dilute the statutorily required omnibus coverage by denying coverage to a permissive user of an otherwise insured vehicle. This is not consistent with Oklahoma's compulsory insurance laws or their underlying public policy.

Falcon issued an owner's policy to Mr. Tidwell that provided coverage for his Equinox and for non-owned vehicles. Oklahoma state law required this policy to "insure the person named therein and insure any other person…using an insured vehicle with the express or implied permission of the named insured." Okla. Stat. tit. 47, § 7-600(1)(b). As explained in part A, the Sentra satisfies the policy's definition of a non-owned vehicle. Thus, as even Falcon concedes, under the terms of the policy, the Sentra would have been an insured vehicle if Mr. Tidwell had been driving it at the time of the collision. Coverage would also have applied had Ms. Drake been involved in an accident while driving the Equinox. But this is precisely the situation *Sisk* found to be in contravention of the compulsory insurance laws: an insurer cannot be permitted to provide coverage for a permissive user of one kind of vehicle (such as the Equinox or a temporary substitute) but not another (such as the non-owned Sentra). *Id.* at 210. Thus, like in *Sisk*, "[t]o the extent that the Policy could be construed to cover [Ms. Drake] while she drove the [Equinox], but exclude her as an insured person while she drove [Mr. Tidwell's] rental car with permission," the policy "do[es] not square with the purpose of the Act." *Id.*

13

Ms. Drake was not an insured driver as defined in the policy with respect to the Sentra, but as a permissive user of Mr. Tidwell's non-owned auto, Falcon was required by statute to provide coverage for the vehicle. This coverage was "fixed" once Mr. Tidwell, the named insured, granted Ms. Drake express permission to operate his otherwise insured vehicle. *O'Neill*, 54 P.3d at 114.

Although the parties to an insurance contract are "free to agree upon such terms as they wish, including whether to limit or restrict the insurer's liability," the "full range of traditional freedom-of-contract principles do not apply." *Ball*, 221 P. 3d at 726. Oklahoma's compulsory insurance laws require coverage for persons "using an insured vehicle with the express or implied permission of the named insured." Okla. Stat. tit. 76, § 7-600(1)(b). This statutory mandate, as well as Oklahoma's clear policy of maximizing coverage of vehicles for the benefit of innocent victims, compels a finding that liability coverage is available under the policy in this case. Accordingly, Falcon owes a duty to indemnify Mr. Tidwell and Ms. Drake for any damages Ms. Chambray or Mr. Goering may recover, up to the mandatory minimum limits required by state law. Falcon does not, however, owe a duty to defend Mr. Tidwell or Ms. Drake, because an "insurer's duty to defend claims against its insured is an *ex contractu* obligation." *Ball*, 221 P.3d at 723 (italics in original).

## CONCLUSION

For the reasons explained above, Plaintiff Falcon Insurance Company, LLC's Motion for Summary Judgment [Doc. Nos. 36, 53] is DENIED. Defendant Tiffany

Chambray's Cross-Motion for Summary Judgment [Doc. No. 41] and Defendant John Goering's Cross-Motion for Summary Judgment [Doc. No. 45] are GRANTED.[10]

**IT IS SO ORDERED** this 5th day of March, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[10] Because claims technically remain pending against Defendants Drake and EAN Holdings, Inc., a separate final judgment is not appropriate at this time. *See* Fed. R. Civ. P. 54(b).